UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COANNE WILSHIRE,

                Plaintiff,

-v-

L&M DEVELOPMENT PARTNERS, *et al.*,

                Defendants.

20-CV-7998 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

    *Pro se* plaintiff Coanne Wilshire, a tenant of a private apartment building called the Larkspur in Manhattan, asserts reasonable accommodation, disparate treatment, and retaliation claims, both under the Americans with Disabilities Act ("ADA") and the Fair Housing Act ("FHA"), against Defendants. Defendants, who collectively own and manage the Larkspur, allegedly denied Wilshire an accessible parking space, terminated her parking space on the basis of her race and disability status, and retaliated against her for complaining to Defendants and filing a complaint with the United States Department of Housing and Urban Development ("HUD") and the New York State Division of Human Rights ("NYSDHR"). Defendants now move to dismiss the complaint for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' motion is granted in part and denied in part.

**I.   Background**

Unless otherwise noted, the following facts are drawn from Wilshire's amended complaint and her opposition brief,[1] as well as documents incorporated by reference, and are assumed true for the purposes of this motion.

Wilshire, a Black woman with a disability, is a tenant of the Larkspur, a private apartment complex in Manhattan. (*See* Dkt. No. 31 ¶¶ 1, 2, 9.) In an affidavit submitted by Angela Colon, a principal of one of the Defendants, she states the following about each of the Defendants: Larkspur LLC owns the Larkspur (*see* Dkt. No. 36 ¶ 3); Larkspur Managers LLC is the Managing Member of Larkspur LLC (*see* Dkt. No. 36 ¶ 4); and Larkspur LLC has delegated exclusive management of the Larkspur to Lemle & Wolff Co. (*see* Dkt. No. 36 ¶ 8). The remaining Defendant, L&M Development Partners,[2] is the general contractor of the Larkspur, has an ownership interest in the Larkspur, and is a partner of Lemle & Wolff. (*See* Dkt. No. 31 ¶ 72; Dkt. No. 40 at 18.)

Wilshire became a tenant of the Larkspur in 2005. (*See* Dkt. No. 31 ¶ 1.) Shortly after becoming a tenant of the Larkspur, Wilshire was assigned to Handicap Parking Space #25 ("Space #25") (*see* Dkt. No. 31 ¶ 5), pursuant to a license agreement (the "Agreement") between her and Larkspur LLC (*see* Dkt. No. 36-2). The Agreement allowed Wilshire to use Space #25 to park one non-commercial vehicle registered in New York and prohibited anyone other than

---

[1] The Court may read any new additional facts asserted in Wilshire's opposition as supplementing her complaint. *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se party* in [her] papers opposing the motion.").

[2] Defendants have also moved to dismiss L&M Development Partners from the case, asserting that it has no ownership interest in the Larkspur. (*See* Dkt. No. 37 at 12–13.) Wilshire asserts that this is untrue in her opposition brief (*see* Dkt. No. 40 at 18), so the Court denies Defendants' request to dismiss L&M Development Partners from the case.

Wilshire from using the space. (*See* Dkt. No. 36-2 ¶ 1.) The Agreement also provided that Larkspur LLC had the right to terminate the Agreement upon no less than thirty days prior written notice to Wilshire. (*See* Dkt. No. 36-2 ¶ 2.) Until the termination of her license, Wilshire parked multiples cars in Space #25 (*see* Dkt. No. 31 ¶ 19), and she began renting Space #25 to a commercial tenant in the Larkspur in 2018 (*see* Dkt. No. 31 ¶¶ 47–48).

In 2015, Wilshire started encountering garbage and refuse in both Space #25 and the access aisle leading to Space #25, which inhibited her ability to access and use her space. (*See* Dkt. No. 31 ¶¶ 24, 25.) In February 2017, Wilshire requested a transfer to Handicap Parking Space #26 ("Space #26"), which the building superintendent denied. (*See* Dkt. No. 31 ¶¶ 36, 39.) From 2017 to July 2018, Wilshire repeatedly complained to the property manager and building superintendent of the Larkspur about the conditions of Space #25 and the access aisle used to reach the space. (*See* Dkt. No. 31 ¶¶ 51, 53.) The building superintendent, in response to Wilshire's complaints, told her that there was no other place to put the excess garbage and that Space #25 was no longer a handicap space. (*See* Dkt. No. 31 ¶ 36, 51.) At some point in 2018, Wilshire again unsuccessfully requested a transfer to Space #26. (*See* Dkt. No. 40 at 3.)

In July 2018, Lemle & Wolff sent Wilshire a notice of breach and termination letter advising her that it was terminating her parking space. (*See* Dkt. No. 31 ¶ 58; Dkt. No. 36-3.) The letter noted that Wilshire had violated the Agreement because Lemle & Wolff had observed multiple vehicles in Space #25, including ones not belonging to Wilshire. (*See* Dkt. No. 36-3.) Multiple tenants in the Larkspur who were White and did not have disabilities also parked multiple cars in their spaces, some of which were not registered in New York, and allowed others to use their spaces. (*See* Dkt. No. 31 ¶ 68.) Yet Lemle & Wolff did not terminate the parking licenses of these other tenants. (*See id.*)

In November 2018, Wilshire filed a complaint (the "Administrative Complaint") with HUD and the NYSDHR, alleging that Larkspur, Lemle & Wolff, and three individual defendants discriminated and retaliated against her by terminating her parking space license. (*See* Dkt. No. 40, Ex. A.) After investigating her allegations, both agencies issued determinations of no probable cause. (*See* Dkt. No. 31 ¶ 78; Dkt. No. 40, Ex. A.) Since filing her Administrative Complaint, Wilshire received threats of eviction from Defendants and employees of the Larkspur harassed Wilshire while she was meeting with building inspectors from the New York City Department of Buildings. (*See* Dkt. No. 31 ¶¶ 84 – 87.)

Wilshire subsequently initiated this action as a *pro se* litigant on September 28, 2020. (*See* Dkt. No. 2.) She filed an amended complaint in April 2021. (*See* Dkt. No. 31.) Defendants have moved to dismiss the amended complaint under Federal Rule of Procedure 12(b)(6). (*See* Dkt. No. 34.)

**II.    Legal Standard**

To survive a motion to dismiss for failure to state a claim upon which relief may be granted, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering such a motion, a court must accept the factual allegations in the plaintiff's complaint as true and draw all inferences in the plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006). Additionally, a complaint "filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Consistent with the duty to liberally construe *pro se* pleadings, a court considering a motion to dismiss a *pro se* complaint may also

4

consider and credit allegations advanced in opposition papers and other filings. *See Henning v. N.Y.C. Dep't of Corr.*, No. 14 Civ. 9798, 2016 WL 297725, at *3 (S.D.N.Y. Jan. 22, 2016).

### III.  Discussion

#### A.  Threshold Arguments

Defendants advance a number of threshold arguments against Wilshire's explicitly pleaded claims under the ADA and FHA.  Defendants also advance threshold arguments against claims Wilshire's complaint could be construed to raise.  The Court first addresses these arguments before addressing Defendants' arguments on the merits of Wilshire's claims.

##### 1.  ADA Claims

Wilshire alleges that Defendants violated the ADA — through their alleged failure to provide her with a reasonable accommodation, their alleged disparate treatment of her because of her race and disability, and their alleged retaliation against her — but does not explicitly state whether her claims are brought under Title II or Title III of the ADA.  The ADA "forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute; public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III." *Tennessee v. Lane*, 541 U.S. 509, 516–17 (2004).  Title II "require[s] that covered entities make reasonable accommodations in order to provide qualified individuals with an equal opportunity to receive benefits from or to participate in programs run by such entities." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 573 (2d Cir. 2003), *superseded by regulation on other grounds as stated in Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 619 (2d Cir. 2016).  Title III prohibits discrimination "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public

5

accommodation." 42 U.S.C. § 12182(a).  To prevail on a claim under the ADA, a plaintiff must establish, among other things, that defendants are subject to one of the titles of the ADA.  *See Lopez v. City of New York*, No. 17 Civ. 3014, 2017 WL 4342203, at *10 (S.D.N.Y. Sept. 28, 2017) (citing *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir. 2004) (internal quotation marks omitted)), *R. & R. adopted*, 2018 WL 1371164 (S.D.N.Y. Mar. 15, 2018).

Plaintiff's ADA claims fail because Defendants are not subject to any of the titles of the ADA.  Title I does not apply here since this case is not about employment.  Defendants are not subject to Title II of the ADA because none of them is a "public entity," *see* 42 U.S.C. §§ 12131(1)(A)–(C) (defining public entities as "any State or local government; any department, agency, special purpose district, or other instrumentality of a State or States or local government; and the National Railroad Passenger Corporation, and any commuter authority"), even if one or all of them received government funding, *see Wiltz v. N.Y. Univ.*, No. 19 Civ. 3406, 2019 WL 8437456, at *7 (S.D.N.Y. Dec. 23, 2019), *R. & R. adopted*, 2020 WL 614658 (S.D.N.Y. Feb. 10, 2020) (collecting cases on private entities receiving government funding not being subject to Title II of the ADA).  And Wilshire does not allege any facts suggesting that Defendants acted in an official capacity on behalf of a public entity.  Defendants are also not subject to Title III of the ADA because a private apartment complex is not a "public accommodation," *see Mazzocchi v. Windsor Owners Corp.*, No. 11 Civ. 7913, 2012 WL 3288240, at *7 (S.D.N.Y. Aug. 6, 2012), which Wilshire concedes (*see* Dkt. No. 40 at 18).  Wilshire suggests that the parking lot of a private apartment complex — distinct from the complex itself — may count as a "public accommodation." (*See id.*)  But the ADA's definition of the term provides no support for this suggestion, *see* 42 U.S.C. § 12181(7), and the Court has found no law supporting this contention.  The Court thus dismisses Wilshire's ADA claims.

6

      **2.**      **FHA Claims**

           a.  **Statute of Limitations**

A private person generally cannot commence a civil action under the FHA more than two years after the last occurrence of alleged discrimination. *See* 42 U.S.C. § 3613(a)(1)(A). Insofar as Wilshire brings reasonable accommodation, disparate treatment, and retaliation claims under the FHA specifically, Defendants argue that these claims are time barred. (*See* Dkt. No. 37 at 5.) Wilshire does not contest that the FHA has a general two-year statute of limitations and that all of the alleged discrimination she experienced — save for some alleged incidents of retaliation after she filed a complaint with the NYSDHR and HUD — happened more than two years before the filing of her complaint. Wilshire instead asserts that her FHA claims are timely due to the "continuing violation doctrine," and because the statute of limitations was tolled starting from when HUD accepted her Administrative Complaint to when it issued its final determination. (*See* Dkt. No. 40 at 4–5.)

The continuing violation doctrine applies when "there is evidence of an ongoing discriminatory policy or practice." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). If a plaintiff puts forth a claim "that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993), *overruled on other grounds by Greathouse v. JHS Sec. Inc.*, 784 F.3d 105 (2d Cir. 2015). "However, multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Id.*

Wilshire's complaint fails to identify a specific discriminatory policy or program that caused the alleged incidents of discrimination here, making the continuing violation doctrine

7

inapplicable.  Wilshire points only to separate incidents of discrimination — the obstruction of her parking space; Defendants' refusal to let her transfer spaces; and Defendants' termination of her parking license (*see* Dkt. No. 40 at 4–5) — without linking them to any specific policy or mechanism that Defendants maintained.  The continuing violation doctrine thus does not save Wilshire's FHA claims from the FHA's statute of limitations.

The FHA's two-year statute of limitations was tolled, though, after HUD accepted Wilshire's Administrative Complaint until it issued its final determination.  *See United States v. E. River Hous. Corp.*, 90 F. Supp. 3d 118, 147 (S.D.N.Y. 2015).  HUD accepted the Administrative Complaint on November 18, 2018, and issued its final determination on July 3, 2019 (*see* Dkt. No. 40, Ex. A), meaning the statute of limitations on Wilshire's FHA claims was tolled for 237 days.  This would make any claims involving incidents that occurred on February 3, 2018 or later timely.  The Court thus dismisses any of Wilshire's FHA claims based on incidents before that date.

### b.  Collateral Estoppel

Defendants argue that Wilshire's FHA claims should also be dismissed because they are precluded by the NYSDHR's "no probable cause" determination in response to her Administrative Complaint.  When a state agency acts in a judicial capacity "federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts."  *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986).  But "where the language of a statute 'would make little sense . . . if state agency findings were entitled to preclusive effect . . . in federal court,' no such preclusive effect should be granted."  *E. River Hous. Corp.*, 90 F. Supp. at 144–45 (S.D.N.Y. 2015) (quoting *Elliott*, 478 U.S. at 795).  New York law explicitly strips NYSDHR's no probable cause findings of preclusive effect in cases involving housing

discrimination.  *See* N.Y. EXEC. LAW § 297(9) ("In cases of housing discrimination only, a person whose complaint has been dismissed by the division after investigation for lack of jurisdiction or lack of probable cause may file the same cause of action in a court of appropriate jurisdiction.").  Accordingly, Wilshire's timely FHA claims are not precluded by the NYSDHR's no-probable-cause finding.

### 3. Claims Under the Rehabilitation Act and the NYSHRL

Wilshire does not expressly assert claims under the Rehabilitation Act or the New York State Human Rights Law ("NYSHRL") in her complaint, but she makes arguments for these claims in her brief.  Based on the facts in her complaint and the additional facts in her brief, the Court construes her complaint to include these causes of action.[3]

Defendants' arguments for why the Court should not consider these claims are unavailing.  Defendants again argue that the NYSDHR's finding of no probable cause has preclusive effect, barring Wilshire from bringing claims under the Rehabilitation Act and the NYSHRL.  For the same reasons that the Court rejected this argument as to Wilshire's FHA claims, it does so for Wilshire's claims under the Rehabilitation Act and NYSHRL as well.

### B. Remaining Arguments on the Merits

#### 1. Disparate Treatment

Wilshire contends that Defendants discriminated against her on the basis of her race and disability by terminating her parking license.  For Wilshire's disparate treatment claim under the

---

[3] Claims under the ADA and under the Rehabilitation Act are generally analyzed under the same standards.  *See Logan v. Matveevskii*, 57 F. Supp. 3d 234, 253 (S.D.N.Y. 2014).  The Rehabilitation Act prohibits entities that receive federal funding from discriminating against persons with disabilities.  *See* Rehabilitation Act of 1973, § 504, 29 U.S.C. § 794.  Wilshire alleges in her opposition brief that Defendants receive federal funding.  (*See* Dkt. No. 40 at 18.)  And claims under the NYSHRL are evaluated under the same framework as claims under the FHA.  *See Olsen v. Stark Homes, Inc.*, 759 F.3d 140, 153 (2d Cir. 2014).

FHA to succeed, she must "establish that the defendant[s] had a discriminatory intent or motive." *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Cmtys. Project, Inc.*, 576 U.S. 519, 524 (2015) (internal quotation marks omitted). "Because discriminatory intent is rarely susceptible to direct proof, litigants may make 'a sensitive inquiry into such circumstantial and direct evidence of intent as may be available.'" *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (quoting *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977)). At the motion to dismiss stage, Wilshire must "allege facts that support a plausible claim that the plaintiff was 'a member of a protected class,' suffered relevant 'adverse' treatment, and 'can sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation.'" *Thompson v. CRF-Cluster Model Program, LLC*, No. 19 Civ. 1360, 2020 WL 4735300, at *10 (Aug. 14, 2020) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). Courts have found this minimal burden to be met when plaintiffs allege that similarly situated individuals — who are not within the same protected class(es) as the plaintiffs — did not suffer the same adverse treatment as plaintiffs. *See, e.g., Thompson*, 2020 WL 4735300, at *11; *Khodeir v. Sayyed*, No. 15 Civ. 8763, 2016 WL 5817003, at *6 (S.D.N.Y. Sept. 28, 2016).

      The Court concludes that Wilshire has alleged sufficient facts to support her disparate treatment claim. Wilshire alleges that she is Black and is an individual with a disability (*see* AC ¶ 9); that she suffered adverse treatment by Defendants' terminating her parking license (*see* Dkt. No. 31 ¶ 58); and that Defendants did not terminate the parking licenses of multiple non-Black individuals and individuals without disabilities who breached the Agreement in the same manner as Wilshire (*see* Dkt. No. 31 ¶ 68). Wilshire's claim of disparate treatment on this point thus survives.

10

### 2. Reasonable Accommodation and Retaliation Claims

Defendants do not contest the merits of Wilshire's reasonable accommodation claims, brought under the FHA and Rehabilitation Act, or her retaliation claims, brought under the FHA, until their reply brief. "[I]ssues raised for the first time in a reply brief are generally deemed waived." *In re Motors Liquidation Co.*, 538 B.R. 656, 665 n.4 (S.D.N.Y.2015) (quoting *Conn. Bar Ass'n v. United States*, 620 F.3d 81, 91 n.13 (2d Cir.2010)). The Court thus denies Defendants' motion to dismiss these claims.[4]

## IV. Conclusion

For the foregoing reasons, Defendants' motion is GRANTED in part and DENIED in part. Wilshire's ADA claims and any claims brought under the FHA for alleged discriminatory incidents before February 3, 2018, are dismissed. Wilshire's remaining claims under the FHA, Rehabilitation Act, and NYSHRL survive.[5]

Defendants shall file answers to the surviving claims within 21 days after the date of this opinion and order.

The Clerk of Court is directed to close the motion at Docket Number 34.

SO ORDERED.

Dated: March 22, 2022
   New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[4] For Wilshire's reasonable accommodation claims under the FHA, only Wilshire's timely claims survive pursuant to the Court's prior analysis.

[5] The Court denies Wilshire's request to amend her complaint to address any deficiencies as futile. The deficiencies in Wilshire's complaint stem from threshold issues that cannot be cured. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (denying leave to replead as futile because "better pleading [would] not cure" the complaint's deficiencies).